IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DIANA MARIE HAHL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. CIV-12-791-M |
| | ) | |
| CAROLYN W. COLVIN,[1] | ) | |
| Acting Commissioner, | ) | |
| Social Security Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Pursuant to 42 U.S.C. § 405(g), Diana Hahl (Plaintiff) seeks judicial review of the Defendant Commissioner's final decision denying her claims for disability insurance benefits (DIB) and supplemental security income (SSI) payments under the Social Security Act. The matter is before the undersigned Magistrate Judge on referral by Chief United States District Judge Vicki Miles-LaGrange for proceedings consistent with 28 U.S.C. § 636(b)(3). Having reviewed the administrative record (AR) in conjunction with the arguments and authorities of both parties, the undersigned recommends that the Commissioner's decision be affirmed.

---

[1] Effective February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social Security. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as Defendant in this action.

I.   **Administrative proceedings.**

Plaintiff applied for benefits in April 2006, stating that her depression, panic attacks, and anxiety became disabling as of December 1, 2003. AR 51-55, 69. Plaintiff reported these medical conditions limited her ability to work because she is unable to concentrate or think straight when she is out in public and "panic[s] when [she] ha[s] to talk to strangers."[2]  *Id.* at 69.  The Social Security Administration (SSA) denied Plaintiff's claims.  *Id.* at 35-38, 41-43. Plaintiff then requested and received an administrative hearing – conducted in May 2008 by Administrative Law Judge (ALJ) Peter Keltch – where she, her mother, a medical expert – Dr. Bower – and a vocational expert all appeared and testified.  *Id.* at 44, 392-451.  Plaintiff was not represented at the hearing.  *Id.*

Dr. Bower testified that she had treatment records from January 2005 through October 2006, but had nothing from before or after those dates and "those records are going to be real important for my opinion."  *Id.* at 401.  After the hearing, ALJ Keltch requested and received updated treatment records and forwarded the records and a medical interrogatory to Dr. Bower.  *Id.* at 218.  Dr. Bower then gave her opinion on August 26, 2009.  *Id.* at 195-99.

---

[2]   Unless otherwise indicated, quotations in this report are reproduced verbatim.

In his September 2009 decision, *id.* at 207-22, ALJ Keltch found that (1) from the time of her alleged December 1, 2003 onset date until July 15, 2004, Plaintiff was not disabled because she was capable of performing her past relevant work as a housekeeper/cleaner as well as other available work in the national economy, *id.* at 211-17, (2) from July 15, 2004 through October 4, 2006, Plaintiff was disabled because her severe major depressive disorder and panic attack impairments met the criteria of listed, presumptively disabling impairments, *id.* at 217-18, and (3) beginning on October 5, 2006, Plaintiff was not disabled because work-related medical improvement had occurred – her severe impairments no longer satisfied the criteria of the listed impairments. *Id.* at 218-21.

In July 2010, the SSA's Appeals Council vacated the decision "with respect to the issue of disability prior to July 15, 2004 and after October 5, 2006 and remand[ed] this case for further proceedings on that issue." *Id.* at 224. The Council affirmed ALJ Keltch's finding that Plaintiff's mental impairments were "of listed severity from July 15, 2004 through October 5, 2006," finding evidentiary support for that determination in Dr. Bower's testimony. *Id.* The Council noted, however, that when Dr. Bower's August 26, 2009 interrogatory "was proffered to the unrepresented [Plaintiff] by letter . . ., her response . . . requesting a supplemental hearing . . . was not associated with the file when the

hearing decision was issued." *Id*. The Council further noted that both ALJ Keltch and Dr. Bower made comments at the hearing "about the need for additional records, which have now been submitted." *Id*. Accordingly, the Council – "persuaded that these treatment records should be re-considered in a re-evaluation of whether the disability had ceased" – ordered a supplemental hearing. *Id*. The Council also stated that additional treatment records had been submitted for its review from the Northwest Center for Behavioral Health and from Gerald Winter LPC, including Mr. Winter's 2009 "opinion that [Plaintiff] does not have the ability to keep a job due to her mental illness." *Id*. The Council ordered that other "available updated treatment records" be obtained and considered along with this evidence as well as with evidence from a medical and a vocational expert, as warranted. *Id*. at 225.

ALJ Douglas Stults conducted the second hearing in May 2011. *Id*. at 346-89. A medical expert – Dr. Feir – a vocational expert, and Plaintiff – with a non-attorney representative – appeared and testified. *Id*. In his October 2011 hearing decision, the ALJ found that Plaintiff retained the capacity to perform available work in the national economy and, consequently, was not disabled within the meaning of the Social Security Act from December 1, 2003 to July 14, 2004, and from October 5, 2006 through the date of his decision. *Id*. at 13-28.

The Appeals Council subsequently declined Plaintiff's request for review

4

of the second hearing decision. *Id.* at 5-8. Plaintiff then sought review of the Commissioner's final decision in this court. Doc. 1.

## II. Analysis.

### A. Standard of review.

This court is limited in its review of the Commissioner's final decision to a determination of whether the ALJ's "factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue,* 602 F.3d 1136, 1140 (10th Cir. 2010). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the ALJ, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.*

### B. Determination of disability.

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which

5

has lasted or can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. § 423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(b)-(f), 416.920(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-52 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving she has one or more severe impairments. 20 C.F.R. §§ 404.1512, 416.912; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**C.    Plaintiff's claims of error.**

In her first challenge to the Commissioner's decision, Plaintiff claims there was insufficient evidentiary support for the ALJ's finding that Plaintiff was not disabled during the seven to eight month period from her alleged December 1, 2003 onset of disability through July 14, 2004. Doc. 16, at 7-11, Doc. 18, at 2-5. Plaintiff's second claim is that the ALJ committed reversible error by failing to apply the requisite medical improvement test with regard to the period beginning on October 5, 2006. Doc. 16, at 12-14, Doc. 18, at 5-7.

6

### 1. The ALJ's finding that Plaintiff was not disabled from December 1, 2003 through July 14, 2004.

#### a. Absence of evidence of treatment.

The ALJ found[3] that Plaintiff's longitudinal medical history failed to support her claim that she was unable to work during this first time period due to depression and panic attacks. AR 17. Specifically, the evidence submitted by Plaintiff to support her claimed limitations – records beginning in 1998 from Wheatland Mental Health Center, Inc. and Northwest Center for Behavioral Heath Outpatient Services – demonstrated instead that Plaintiff "obtained her prescribed psychotropic medications on September 9, 2003, and obtained no additional medication until July 15, 2004, the first day of the closed period of disability . . . ." *Id.* The ALJ concluded there "is no evidence [Plaintiff] obtained any treatment for her allegedly disabling mental impairments during the first period at issue . . . ." *Id.*

Thus, while claiming that her mental limitations became disabling as of December 1, 2003, Plaintiff did not provide any evidence – and does not direct the court to any such evidence now – that she was receiving any treatment or any medications at that time. Nonetheless, because the record showed that Plaintiff's physician treated her with medications consistent with her mental

---

[3] This report addresses only those findings that are pertinent to each specific claim of error.

impairments prior to July 14, 2004, the ALJ determined that she was severely impaired by major depressive disorder, recurrent, moderate and by panic disorder without agoraphobia during this time frame. *Id.*

### b. Evidence supporting step four RFC assessment.

The ALJ then found that despite her mental impairments, Plaintiff had the physical residual functional capacity[4] (RFC) to perform a full range of work at all exertional levels. *Id.* at 22. Her mental impairments, however, restricted her to work requiring that she understand, remember, and carry out only simple and repetitive tasks; make only simple work-related decisions; deal with only occasional changes in work processes and environment; have no contact with the general public; work with things rather than people; and, have only incidental, superficial work-related contact with co-workers and supervisors. *Id.*

In support of this assessment, the ALJ relied on an August 2006 functional capacity assessment by Joseph Tramontana, Ph.D., a State agency psychological expert.[5] *Id.* at 23, 170-74. Dr. Tramontana reviewed, *id.* at 168, the July 2006

---

[4] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[5] The ALJ also referenced, AR 23, the opinion of Burnard Pearce, another State agency psychological expert. *Id.* at 186.

mental status examination findings of the consultative examining psychologist,[6] Dr. Robert Danaher, Psy.D., *id.* at 149-55, and concluded, as the ALJ noted, *id.* at 23, that Plaintiff "has some very real psychological issues for which she is receiving treatment . . . ." *Id.* at 172. Nonetheless, based on the evidence of record, *id.* at 168, Dr. Tramontana opined that "she should be able to complete routine, repetitive tasks, interact with coworkers, accept supervision, and maintain the concentration, persistence, and pace consistent with the requirements of unskilled labor." *Id.* at 172.

Plaintiff maintains, however, "that the Social Security Administration itself does not recognize . . . Dr. Tramontana's . . . report[] as acceptable evidence." Doc. 18, at 3. That is not correct. With regard to the opinions of State agency consultants, Social Security regulations provide that

> Administrative law judges are not bound by any findings made by State agency medical or psychological consultants, or other program physicians or psychologists. State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists are highly qualified physicians, psychologists, and other medical specialists who are also experts in Social Security disability evaluation. Therefore, administrative law judges must consider findings and other opinions of State agency medical and psychological consultants and other program physicians, psychologists, and other medical specialists as opinion evidence . . . .

---

[6] Thus, contrary to Plaintiff's suggestion, Doc. 16, at 10-11, she was provided with a consultative mental examination several months after initiating her claims.

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, the administrative law judge will evaluate the findings using the relevant factors in paragraphs (a) through (e) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

20 C.F.R. §§ 404.1527(f)(2)(I), (ii), 416.927(f)(2)(I), (ii) (effective June 13, 2011 to March 25, 2012).

Here, the ALJ gave Dr. Tramontana's opinions great weight, finding in part that he had recognized and accounted for Plaintiff's subjective complaints and that his opinions were consistent with those of the medical expert, Dr. Feir[7] and with the record as a whole.[8] AR 23-24. The ALJ's assessment of Plaintiff's

---

[7] The ALJ relied on the interrogatories completed by Dr. Feir in June 2011. AR 24. Contrary to Plaintiff's contention, Doc. 16, at 9-10, Dr. Feir did not distinguish between particular time periods in her assessment of Plaintiff's functional limitations. *Id.* at 334-42.

[8] Plaintiff erroneously suggests that Dr. Tramontana's opinions are "not substantial evidence" pursuant to Social Security Ruling 96-6p, 1996 WL 374180. Doc. 18, at 4. The expert's opinions were grounded on the results of a mental status examination and were consistent with other evidence of record. "RFC assessments by State agency . . . psychological consultants . . . are to be

(continued...)

RFC during the December 1, 2003 to July 14, 2004 time period is substantially supported by Dr. Tramontana's opinion of Plaintiff's functional limitations.

### c. Evidence supporting step five finding.

Plaintiff also argues that she is entitled to benefits for this time period "if the Commissioner cannot establish that she retains the capacity 'to perform an alternative work activity and that this type of job exists in the national economy.'" Doc. 16, at 8. When, as here, an ALJ reaches step five of the sequential analysis, "the burden of proof shifts to the Commissioner . . . to show that the claimant retains sufficient RFC to perform work in the national economy, given her age, education and work experience." *Hackett v. Barnhart*, 395 F.3d 1168, 1171 (10th Cir. 2005). Relying on the testimony of a vocational expert, the ALJ found that an individual with Plaintiff's assessed RFC could make a successful adjustment to available work in the national economy. AR 27-28. The Commissioner's step five burden was met, and Plaintiff fails to make a cogent, supported argument to the contrary.

### d. Conclusion.

Plaintiff's first claim of error – that there was insufficient evidentiary support for the ALJ's finding that Plaintiff was not disabled during the seven to

---

⁸(...continued)
considered . . . as medical opinions from nonexamining sources about what the individual can still do despite his or her impairment(s)." SSR 96-6p, at *4.

eight month period from her alleged December 1, 2003 onset of disability through July 14, 2004 – is not well-taken.

### 2. The ALJ's determination that Plaintiff's disability did not continue after October 5, 2006.

#### a. The parties' contentions.

Here, Plaintiff's claim is that because she "incurred a closed period of disability from July 15, 2004 to October 5, 2006 . . . the findings and decision for the period of time from October 5, 2006 forward must proceed under a medical improvement standard of review." Doc. 16, at 12. Plaintiff argues that under SSA regulations, 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1), medical improvement is any decrease in the medical severity of her mental impairments at the time of her last favorable disability decision – here, October 5, 2006. *Id.* Moreover, a determination that there has been such a decrease must be based on improvement in her impairment-related signs, symptoms, and/or laboratory findings. *Id.* According to Plaintiff, the ALJ failed to apply the medical improvement test and "there is no express comparison by the ALJ of the medical severity of the Plaintiff's current impairments (major depressive disorder, recurrent, moderate, and panic disorder without agoraphobia) . . . to the severity of those impairments as present at the time of the most favorable medical decision." *Id.* at 13. In response to Plaintiff's claim, the Commissioner does not suggest that the regulations relied on by Plaintiff are inapplicable in this case.

Doc. 17, at 11-13. Rather, she contends that "[t]he ALJ, in fact, affirmatively found that Plaintiff's mental impairments had improved." *Id.* at 11.

### b. Medical improvement regulations.

The medical improvement standard applies in closed period of disability cases. *Shepherd v. Apfel*, 184 F.3d 1196, 1198 (10th Cir. 1999). Here, the closed period ended on October 5, 2006. AR 224. Thus, the ALJ was required to determine for the period after October 5, 2006 "if there has been any medical improvement in [Plaintiff's] impairment(s) and, if so, whether this medical improvement is related to [Plaintiff's] ability to work." 20 C.F.R. §§ 404.1594(a), 416.994(a). The ALJ did so in this case. As is explained, he did not make an explicit statement that there had been a medical improvement in Plaintiff's mental impairments related to her ability to work. AR 13-28. Nonetheless, the ALJ made explicit findings that foreclose any other result under the distinct posture of this case.

### c. Plaintiff's medical improvement.

In this regard, ALJ Keltch – the first ALJ – found that Plaintiff was severely impaired by major depression, recurrent, moderate and by a panic disorder without agoraphobia. AR 211. He further determined that "[b]eginning on July 15, 2004 through October 4, 2006, the severity of [Plaintiff's] impairments has met the criteria of section 12.04 and section 12.06 of 20 CFR

13

Part 404, Subpart P, Appendix 1 . . . ." *Id.* at 217. Accordingly, no RFC was assessed for this closed period because the sequential inquiry stopped at this point. "If we can find that you are disabled . . . at a step, we make our . . . decision and we do not go on to the next step." 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The Appeals Council affirmed this portion of ALJ Keltch's decision, finding it supported by substantial evidence. *Id.* at 224.

These findings by the first ALJ – upheld by the Appeals Council – implicated specific medical improvement regulations and dictated a specific course for the second ALJ. These same regulations further undercut Plaintiff's contention that the second ALJ erred by failing to compare Plaintiff's current RFC with her RFC at the time of her last favorable medical condition – that is, when her mental impairments met listed severity through October 4, 2006. With regard to Plaintiff's continued entitlement to DIB benefits after that date, these regulations provide as follows:

> *If our most recent favorable decision was based on the fact that your impairment(s) at the time met or equaled the severity contemplated by the Listing of Impairments in appendix 1 of this subpart, an assessment of your residual functional capacity would not have been made.* If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work. Appendix 1 of this subpart describes impairments which, if severe enough, affect a person's ability to work. If the appendix level of severity is met or equaled, the individual is deemed, in the absence of evidence to the contrary, to

14

be unable to engage in substantial gainful activity. *If there has been medical improvement to the degree that the requirement of the listing section is no longer met or equaled, then the medical improvement is related to your ability to work. We must, of course, also establish that you can currently engage in gainful activity before finding that your disability has ended.*

20 C.F.R. § 404.1594(c)(3)(I) (emphasis added) (effective Dec. 18, 2006 to Aug. 23, 2012). By the same token, the virtually identical provision applies with respect to Plaintiff's SSI payments:

*If our most recent favorable decision was based on the fact that your impairment(s) at the time met or equaled the severity contemplated by the Listing of Impairments in appendix 1 of subpart P of part 404 of this chapter, an assessment of your residual functional capacity would not have been made.* If medical improvement has occurred and the severity of the prior impairment(s) no longer meets or equals the same listing section used to make our most recent favorable decision, we will find that the medical improvement was related to your ability to work. Appendix 1 of subpart P of part 404 of this chapter describes impairments which, if severe enough, affect a person's ability to work. If the appendix level severity is met or equaled the individual is deemed, in the absence of evidence to the contrary, to be unable to engage in gainful activity. *If there has been medical improvement to the degree that the requirement of the listing section is no longer met or equaled, then the medical improvement is related to your ability to work. We must, of course, also establish that you can currently engage in substantial gainful activity before finding that your disability has ended.*

20 C.F.R. § 416.994(b)(2)(iv)(A) (emphasis added) (effective Dec. 18, 2006 to Aug. 23, 2012).

ALJ Stults – the second ALJ – found that Plaintiff's impairments did not

15

meet or equal listed severity after October 5, 2006. *Id.* at 20-22. In making this determination, he specifically relied on the findings of the medical expert, Dr. Feir, who "testified she noted no *marked* limitations in the claimant's functioning [from] October 5, 2006 through the present." AR 20 (emphasis added). Plaintiff does not challenge these findings by Dr. Feir for this "second" period of disability. Doc. 16, at 10, 13.[9] By determining that Plaintiff's impairments – impairments the first ALJ and the Appeals Council found met the criteria of listed impairments until October 5, 2006 – did not meet listed severity after that date, ALJ Stults obviously found a decrease in the medical severity of Plaintiff's mental impairments and, under the regulations, that medical improvement had occurred. Under these same regulations, the medical impairment that occurred is deemed related to Plaintiff's ability to work.

With respect to Plaintiff's ability to engage in substantial gainful activity, ALJ Stults – meeting the requirements of 20 C.F.R. §§ 404.1594(c)(3)(I), 416.994(b)(2)(iv)(A) – then assessed Plaintiff's RFC, AR 22, and relying on the testimony of a vocational expert, found that an individual with Plaintiff's assessed RFC could make a successful adjustment to available work in the

---

[9] According to the Plaintiff, the ALJ stated that "Defendant's own medical expert; Dr. Feil reported in 2011 that the Plaintiff's conditions remain 'stable.' (AR 20)". Doc. 16, at 13. What the ALJ actually stated, however, was that Dr. Feir testified that Plaintiff "remains stable *when she complies with her treatment regimen.*" AR 20 (emphasis added).

16

national economy. *Id.* at 27-28. Plaintiff makes no supported challenge to either determination. Instead, Plaintiff's evidentiary argument is grounded exclusively on medical improvement and her theory that "the ALJ point[ed] to no evidence in support of a medical improvement standard via medical evidence or RFC . . . ." Doc. 16, at 14.

Plaintiff's argument is, in a word, unfounded. Under the posture of this case, the first ALJ did not assess an RFC for the period from July 15, 2004 through October 4, 2006 because he found that Plaintiff's mental impairments met listed severity. *See* 20 C.F.R. §§ 404.1594(c)(3)(I), 416.994(b)(2)(iv)(A). The sequential inquiry stopped at that point for the closed period. Thus, the second ALJ had no RFC from this closed period against which to make a comparison. In her effort to show the absence of medical improvement, Plaintiff makes an irrelevant comparison between the RFC assessed by the first ALJ for the period from December 1, 2003 to July 15, 2004, AR 214, and the RFC assessed by the second ALJ for the period after October 5, 2006. Doc. 16, at 13-14. Not surprisingly, the RFC's are similar in that both ALJ's found that Plaintiff was not disabled during these periods. The proper point of comparison, of course, would be "with the RFC before the putative medical improvements." *Shepherd*, 184 F.3d at 1201. But, in this case, there was no such RFC, and no comparison could, or should, have been made by the second ALJ. *See* 20 C.F.R. §§

404.1594(c)(3)(I), 416.994(b)(2)(iv)(A).

### d. Conclusion.

By operation of the applicable regulations, the result of ALJ Stults' supported step three finding that Plaintiff's impairments were not of listed severity after October 5, 2006, was that medical improvement had occurred and that it related to Plaintiff's ability to work. This result is not altered by the ALJ's failure to apply the term "medical improvement" to that decreased severity, and any error is this regard is harmless.[10] Thus, with respect to the period after October 5, 2006 through the date of the ALJ's decision, Plaintiff's claim of error – that the ALJ failed to apply a proper medical improvement standard – fails.

## III. Recommendation and notice of right to object.

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by June 27, 2013, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives

---

[10] *See Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004) (Under the doctrine of harmless error, "a missing dispositive finding" may be supplied "where, based on material the ALJ did at least consider (just not properly), we could confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way.").

their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 7th day of June, 2013.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE